[Cite as *Vadala v. Trumbull Cty. Sheriff*, 2013-Ohio-5078.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| ROCCO VADALA, | : | **O P I N I O N** |
| Appellant, | : | |
| - vs - | : | **CASE NO. 2013-T-0060** |
| TRUMBULL COUNTY SHERIFF, | : | |
| Appellee. | : | |

Administrative Appeal from the Trumbull County Court of Common Pleas, Case No. 2012 CV 01015.

Judgment: Affirmed.

*Thomas N. Michaels,* 839 Southwestern Run, Youngstown, OH 44514 (For Appellant).

*Dennis Watkins*, Trumbull County Prosecutor, and *James T. Saker*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Appellee).

COLLEEN MARY O'TOOLE, J.

{¶1} Rocco Vadala appeals from the judgment entry of the Trumbull County Court of Common Pleas, affirming the decision of the Ohio State Personnel Board of Review (the "board"), on two cases relating to Mr. Vadala's employment with the Trumbull County Sheriff's Department. The board found that Mr. Vadala was an unclassified employee of the sheriff, and that it lacked jurisdiction of his cases. We affirm.

**{¶2}** Mr. Vadala was hired by Trumbull County Sheriff Thomas Altiere in 2000. In August 2008, he was laid off; in December 2008, he learned that his employment had been terminated. Mr. Vadala filed two actions with the board, one concerning the layoff, the other, his termination. The board's administrative law judge ("ALJ") recommended the cases be dismissed as untimely filed, which recommendation the board adopted May 12, 2009. Mr. Vadala appealed this decision to the trial court. December 14, 2009, the trial court reversed the board's decision, finding the cases were timely filed. The trial court remanded the cases to the board for a determination on the merits.

**{¶3}** Hearing was held before the board's ALJ July 22, 2011. The sole purpose of the hearing was to determine whether Mr. Vadala had been a classified, or unclassified, employee of the sheriff. Testifying were Sheriff Altiere; Chief of Operations Donald Guarino; Deputy Chief Ernest Cook; and Mr. Vadala.

**{¶4}** Sheriff Altiere testified that he knew Mr. Vadala prior to hiring him. Mr. Vadala had been chief probation officer for the Trumbull County Court Eastern District. The sheriff testified that he always considered Mr. Vadala part of the management team, and that he did not report to anyone except the sheriff, though he had an administrative supervisor. The sheriff indicated that Mr. Vadala initially worked as a case manager in the jail, tasked with identifying inmates eligible to participate in various programs, and arranging for instructors to visit the jail. One of Mr. Vadala's jobs had been working on the jail reduction program, trying to reduce overcrowding, and get inmates put on community control. Mr. Vadala also worked on the sheriff's website, and wrote grant proposals. The sheriff testified that Mr. Vadala had no written job description, was trusted by the sheriff to accomplish any task given him without direct

2

supervision, and had no set work schedule, being free to come and go as he pleased. The sheriff noted that Mr. Vadala was highly active in local politics throughout his tenure at the department, being president of the Trumbull County Young Democrats, a precinct captain, and member of the sheriff's own campaign committee in 2004.

{¶5} Chief Cook also testified that he knew Mr. Vadala prior to his hiring by the department. He testified that he was Mr. Vadala's supervisor from 2000 until 2008, and that Mr. Vadala was generally trusted to do his work without direct supervision. He testified that Sheriff Altiere placed a high degree of trust in Mr. Vadala, as indicated by his involvement in interviewing inmates to see what, if any, programs for which they might be eligible, and that this knowledge was greater than that possessed by most corrections officers. Chief Cook testified that Mr. Vadala had a good "radar" in dealing with inmates, and that he was considered the department's troubleshooter. Chief Cook testified that he and Mr. Vadala worked together in drafting grant proposals, and that, while he always reviewed the proposals, he trusted Mr. Vadala's judgment.

{¶6} Chief Guarino testified that he commenced working at the sheriff's department in March 2008, and became Mr. Vadala's supervisor at that time. He testified that in July 2008, he ordered Mr. Vadala to work regular hours, and use the department time clock. He testified that he was unaware of Mr. Vadala's duties, other than grant writing, and that he assigned no duties to Mr. Vadala. Chief Guarino requested from Mr. Vadala, but never received, a list of his job duties. Chief Guarino testified that in the summer of 2008, it was decided to abolish Mr. Vadala's then-position of administrative assistant, but that he was offered a position as jail administrator, for which he was required to attend corrections officer school. Chief Guarino noted that Mr.

3

Vadala did attend the school for two days, then quit. Chief Guarino testified that Mr. Vadala had access to all sections of the jail, a privilege reserved for Sheriff Altiere's management team.

{¶7} It was generally agreed that Mr. Vadala attended some, but not all, meetings of Sheriff Altiere's management team. Sheriff Altiere admitted that Mr. Vadala's decision making authority was limited, and that he could not sign the sheriff's name to documents, or issue discipline. Chief Cook testified that Mr. Vadala had some decision making authority, but did not formulate policy. Chief Guarino testified that during the three months he supervised Mr. Vadala, the latter did not make decisions or formulate policy.

{¶8} Mr. Vadala testified that he never had any decision making authority, or any input into policy. He testified that in his initial work as a case manager, he merely identified prisoners who met the requirements for early release, and submitted their names to the appropriate judge. He testified that he coordinated the work release program. He testified that his work on other programs at the jail, was similarly purely clerical, such as making sure that speakers from Alcoholics Anonymous were able to visit. He testified that as administrative assistant, he merely did research for programs. He testified that his work on grants was, again, mere research, which he submitted to Chief Cook for decision. Mr. Vadala stated that his participation in management meetings was sporadic, and limited to presenting information requested from him.

4

{¶9} The ALJ issued her report and recommendation December 8, 2012. She again recommended finding the cases untimely filed. She further recommended finding that Mr. Vadala had been an unclassified employee of the sheriff, over whom the board lacked jurisdiction.

{¶10} Mr. Vadala filed objections to the ALJ's report; the sheriff's department responded. By an order filed April 17, 2012, the board refused to accept the ALJ's recommendation that the cases be found untimely. However, it adopted her recommendation that the board lacked jurisdiction.

{¶11} May 2, 2013, Mr. Vadala appealed the board's decision to the trial court, pursuant to R.C. 119.12. May 10, 2013, the trial court affirmed the board's decision. This appeal timely ensued, Mr. Vadala assigning one error: "The trial court abused its discretion by affirming the Ohio State Personnel Board of Review's decision that found appellant was in the unclassified service." Under this assignment of error, Mr. Vadala presents two issues for review. The first reads: "Whether the trial court's decision that by a preponderance of reliable, probative and substantial evidence, Vadala occupied a fiduciary relationship with Trumbull County Sheriff Thomas Altiere was unreasonable, arbitrary or unconscionable." The second reads: "Whether the trial court's decision that by a preponderance of reliable, probative and substantial evidence Vadala occupied a administrative relationship with Trumbull County Sheriff Thomas Altiere was unreasonable, arbitrary or unconscionable."

{¶12} "Initially, we note that in an administrative appeal filed pursuant to R.C. 119.12, the standard of review applied by the common pleas court requires it to determine whether the [State Personnel Board of Review's] order is supported by

reliable, probative, and substantial evidence and is in accordance with law. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, * * *. The court of common pleas may, to a limited extent, substitute its judgment for that of the administrative agency, but must give deference to the agency's resolution of evidentiary conflicts. *Id.* Upon further appeal to this court from the common pleas court, our standard of review is limited to a determination of whether the court of common pleas abused its discretion in finding that there was substantial, reliable, and probative evidence in the record to support the order of the SPBR, and in finding that the order was in accordance with law. *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, * * *." (Parallel citations omitted.) *Barr v. Harrison Cty. Common Pleas Court*, 10th Dist. Franklin No. 05AP-760, 2006-Ohio-1348, ¶8.

{¶13} "(1) 'Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) 'Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) 'Substantial' evidence is evidence with some weight; it must have importance and value." (Footnotes omitted.) *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶14} The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto,* 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland,* 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist. 2008).

6

{¶15} Mr. Vadala contends he was a classified employee of the Trumbull County Sheriff's Department. The jurisdiction of the State Personnel Board of Review is limited to classified employees. R.C. 124.03(A)(1). The sheriff contends, and the board and trial court found, that Mr. Vadala was an unclassified employee, since he acted in a fiduciary or administrative relation to the sheriff, an elected official. R.C. 124.11(A)(9). Ohio Adm.Code 124-1-02(I) provides:

{¶16} "'Fiduciary relationship' generally means a relationship where the appointing authority reposes a special confidence and trust in the integrity and fidelity of an employee to perform duties which could not be delegated to the average employee with knowledge of the proper procedures. These qualifications are over and above the technical competency requirements to perform the duties of the position. Whether one position occupies a fiduciary relationship to another is a question of fact to be determined by the board."

{¶17} Ohio Adm.Code 124-1-02(C) provides:

{¶18} "'Administrative relationship' generally means a relationship where an employee has substantial authority to initiate discretionary action and/or in which the appointing authority must rely on the employee's personal judgment and leadership abilities. The average employee would not possess such qualities or be delegated such discretionary authority. Whether one position occupies an administrative relationship to another is a question of fact to be determined by the board."

{¶19} The determination of whether an employee is classified or unclassified depends on the actual duties performed by the employee, not his or her title. *Barr*, *supra*, at ¶10. If an employee performs some administrative or fiduciary function, that

7

employee is unclassified, even if the majority of the employee's duties fall within the classified service. *Id.* at ¶12-13, citing *Honaker v. Scioto Cty. Common Pleas Court*, 4th Dist. Scioto No. 92-CA-2087, 1993 Ohio App. LEXIS 5964 (Dec. 6, 1993).

{¶20} Given this law, we find the trial court's judgment affirming the board's decision comports with the record, and is no abuse of discretion. Mr. Vadala testified that his duties in connection with such programs as reducing the jail population, and work release, were purely clerical. Sheriff Altiere and Chief Cook testified that these programs required Mr. Vadala to judge closely whether a particular inmate was fit for the particular program. Mr. Vadala testified that his work in writing grants was mere research, for Chief Cook's use. Chief Cook testified he relied on Mr. Vadala's judgment in writing the proposals. The board's ALJ heard the testimony: both we and the trial court are required to defer to her evidentiary judgments, and she believed the sheriff and Chief Cook. Sheriff Altiere testified that he always considered Mr. Vadala a member of management, and that he had full discretion in completing any task assigned him. Chief Cook described Mr. Vadala as the sheriff's troubleshooter. Except for the last three months of his employment, Mr. Vadala set his own hours. He had access to all parts of the jail – a privilege reserved to the sheriff's management team. He freely participated in political activities, which would be a violation of R.C. 124.57 for any member of the classified service. At the very least, Mr. Vadala exercised some fiduciary and/or administrative duties throughout his tenure, which means he was a member of the unclassified service. *Barr, supra*, at ¶12-13.

8

{¶21} The assignment of error lacks merit. The judgment of the Trumbull County Court of Common Pleas is affirmed. It is the further order of this court that appellant is assessed costs herein taxed. The court finds there were reasonable grounds for this appeal.

TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.